J-S65015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| L.A.B. | : | |
| | : | |
| Appellant | : | No. 1348 MDA 2019 |

Appeal from the Order Entered July 25, 2019
In the Court of Common Pleas of York County
Civil Division at No(s): 2011-FC-001342-03

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:　　　　**FILED: FEBRUARY 28, 2020**

L.A.B. ("Mother") appeals the trial court's July 25, 2019, order finding Mother in contempt and awarding C.S. ("Father") $500.00 in counsel fees. Mother further challenges the trial court's order reaffirming a prior custody order of October 3, 2018, that awarded Mother and Father shared legal custody and Father primary physical custody of the parties' daughter, L.A.S. ("Child" or "the Child") (born February 2010). After careful review, we affirm in part and vacate in part.

Beginning in September 2011, Mother and Father shared legal and physical custody of Child. No further litigation activity occurred until May 2018, when Father filed a petition for contempt and modification of custody.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The parties reached a resolution regarding Father's petition and the trial court entered an order on October 3, 2018, providing the parties with shared legal custody. With respect to physical custody, the order divided the parties' custody over two-week periods.

During the first week, the order granted Mother overnights on Monday, Tuesday, Saturday, and Sunday. *See* Order, 10/3/18, at 2. The order granted Father overnights on Wednesday, Thursday, and Friday. *See id.* During the second week, the order granted Mother the Monday overnight, with Father exercising physical custody for the remainder of the week. *See id.*

Custody exchanges occurred at the end of Child's school day during the week, and at noon on Saturdays and "any other non-school time." *See id.* Accordingly, during each two-week period, Father exercised physical custody for nine overnights, and Mother exercised physical custody for five overnights.

Further, the court ordered the parties to engage in co-parenting counseling; directed that the primary communication between the parties occur through My Family Wizard; precluded Mother from drinking while Child was present; instructed each party to have Child to school on time; and required both parties "to use common sense in scheduling telephone calls to talk to the child." *See id.* at 4-12.

On February 28, 2019, Mother filed a petition for modification, seeking a return to a shared physical custody schedule. Father responded by filing a petition for contempt on March 13, 2019. Father's petition alleged, *inter alia*, that Mother: engaged in phone calls that were excessive, including during

Father's holiday, Thanksgiving; continued to drink alcohol while Child was present; brought Child to school late twice; did not consider the welfare of Child prior to filing her petition for modification; and failed to use Our Family Wizard for all communications. ***See*** Petition for Contempt, 3/13/19, at ¶¶ 5-9.

The court held a combined hearing on the petitions on July 23, 2019. At the hearing, Mother, Father, Child's maternal grandmother, Child's paternal grandmother, and Father's wife, N.S. ("Stepmother") testified. Further, the court interviewed Child *in camera*.

Following the hearing, the trial court denied Mother's petition for modification by reaffirming the October 3, 2018, custody order.[1] ***See*** N.T., 7/23/19, at 128-29. The only change to the prior order was that the parties were discharged from co-parenting counseling. ***See id.*** In support, the court placed the following findings of fact and conclusions of law on the record.

> The first factor is which party is more likely to encourage and permit frequent and continuing contact between the child and the other party. We find that to be a neutral factor. We already stated that the child [] indicated that the parents are getting along better and we heard no testimony that either party was trying to keep the child from the other party and so that is really not a factor.
>
> Second factor is any past or present abuse. We heard no testimony on that. We don't believe any abuse has taken place, so factor number two is also not a factor. Factor 2.1 is relative to

---

[1] The court stated: "it is the Order of Court in this matter that the order of [October 3] of 2018 is ratified in full." N.T., 7/23/19, at 128-29.

possible child abuse and protective services. Again, we heard no testimony on that, and, therefore, factor 2.1 is also not a factor.

Factor 3, the parental duties performed by each party on behalf of the child. We find that slightly in favor of Father. While Mother seems to be doing a good job as a mother, it is clear to this [c]ourt and candidly it was clear to this [c]ourt back in September when we took testimony before the agreed-upon order, that Father is[,] for lack of a better term, a super dad. The enthusiasm about which he testified today about the things that he does with [Child] and the way he has manipulated his work hours and job requirements so that he can spend almost every weekday that [Child] is with him he can spend with her by working at home, and a lot of other testimony indicates that he is [a] far better than average father. Accordingly, that factor is lightly in favor of Father.

Factor 4, is [the] need for stability and continuity in the child's education, family life, and community life. Again, this is slightly in favor of Father. Mother has continued, as she did when we heard this matter back in September of last year, Mother has continued to be a bit of what we call irresponsible. She has been late for school three times, two by her own admission. She uses for day care and so forth people in her family that do have DUIs. That alone wouldn't be a big deal, but it is just one of many reasons why we find Mother to be a bit irresponsible. She has abused the phone privileges. She didn't show up for [the co-parenting counselor,] Laura Frie's appointment. She totally missed her daughter's dance recital, even though dance was the thing that Mother introduced the daughter to. Again, Factor 4 is slightly in favor of Father.

Factor 5, the availability of extended family. Clearly[,] both parties have a high deal of involvement with extended family, which is commendable and obviously this child has prospered from that. Therefore, that is a neutral factor.

Factor 6, the child's sibling relationships. While V[.] is a step-sister, it was clear to this court before we started testimony and interviewed the child, herself, that [Child] considers V[.] to be a sister. The child[] did tell me about the things that she does with V[.]. It is clear they do a great number of things together. Father's exhibits have pictures in them that they obviously do everything together while [Child] is with her father. Candidly, we

find that relationship, even though it is a step-sister, we find it to be a sibling relationship and a fairly strong factor in favor of Father.

Factor 7, the well-reasoned preference of the child. Child very clearly said she did not want the schedule changed. I asked her several times in several different ways if there was anything she would change about the schedule, and she said not. Child, when interviewed by this [c]ourt[,] was intelligent, articulate, animated, funny, and just a wonderful child. These parties are doing a great job raising this child. I found what she told me to be totally credible with no coaching involved, so I take her preference with some fairly good amount of weight. Clearly[,] her preference is to keep the schedule the way it is, so that's a factor in favor of keeping the order the way it is. Or[,] said differently, that is a factor in favor of Father.

Number 8, the attempts of a parent to turn the child against the other parent, unless there is domestic violence. I really didn't hear any of that. I don't think that's a factor and we are not considering that as a factor.

Factor 9, which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs. Mother testified, and I believed her, that she is very loving and takes care of the child's emotional needs well when the child is with her. However, Father, again[,] almost in like [a] super dad kind of role, obviously takes care of the child's needs extremely well, including her emotional needs. We can't help but find that factor slightly in favor of Father.

Factor 10, which party is more likely to attend to the daily, physical, emotional, developmental, educational and special needs of the child. Again, this is lightly in favor of Father. He went to both parent-teacher conferences. Mother testified she only went to one. Again, Mother missed the recital. Mother just seems to have trouble getting to places on time and reliably, whereas Father is much more consistent and attends to these things reliably.

Factor 11, the proximity of the residences of the parties. We had a stipulation that they live, I think it was seven miles apart. I think someone said that is 15 or 20 minutes. That is not a factor.

Factor 12, each party's availability to care for the child or ability to make appropriate child care arrangements. Again[,] like the extended family, both parties have done a commendable job of arranging for day care when necessary, having family provide that day care when it is necessary, and that really both parties are doing that so well that is a neutral factor.

Factor 13, the level of conflict between the parties and their ability to cooperate with one another. Back in September that was fairly poor. Whether it's been the passage of time or the four or five sessions the parties had with Laura Frie or what, I'm not sure, but the level of conflict has abated and they are getting along better. I specifically asked [Child] if they ever argue, yell at each other, or call each other names, she said none of that. That is not a factor, and I am glad it's not a factor. I commend both parties for deescalating the conflict.

I would very much like to see the parties use the appointment app on OurFamilyWizard. Apparently[,] neither of them understood that, so that is why we put it in the order. Since we have ratified the [October] 2018 order, they are to use OurFamilyWizard not just to communicate with each other but also for appointments. It makes it so easy to have everyone know when the appointments are, where they are, and there [are] no accusations that you didn't tell someone about it, because it's all documented on OurFamilyWizard. At any rate[,] it's a neutral factor.

Factor 14, the history of drug and alcohol abuse. Candidly, we don't believe that Mother has completely overcome her abuse of alcohol. Her family certainly hasn't, but we really didn't have anything solid to base that on, so we are not considering it as a factor.

Factor 15, the mental and physical condition of a party or a member of a party's household. We heard nothing bad about anyone's mental or physical condition, so that is not a factor.

Factor 16, any other relevant factor. There is no other relevant factor in this matter.

*Id.* at 129-35.

Further, the court found Mother in contempt, reasoning:

[W]e find Mother in contempt of court for extended phone calls longer than common sense would dictate, particularly on the Thanksgiving [D]ay. Father testified that it was so long it interfered with their Thanksgiving meal. This is a 9/5 schedule. It is a shared schedule. It is not exactly 50/50, but it is a shared schedule, so the necessity for long telephone calls just is not there. We find Mother in contempt for that.

We also find Mother in contempt for missing the July 11th of 2019 appointment with Laura Frie. The Order was very specific that the parties were to do co-parent[ing] counseling with Mr. Bare, or if he wasn't available, with someone else. They started that with Laura Frie. They were to continue that. The Order says that they were to continue that until discharged by the therapist. Mother didn't do that, she didn't show up on July 11th of 2019, so she is in contempt of court on that second count.

For the contempt of court, the [O]rder of the [c]ourt is that Mother shall pay the sum of $500 attorney's fees to Father within 60 days of today.

Order, 7/25/19.

Mother timely filed a notice of appeal and concise statement of errors complained of on appeal. The trial court authored a Rule 1925(a) opinion.

On appeal, Mother raises the following issues for our review:

1. The trial court abused its discretion and erred in making a finding of fact that the child expressed a clear desire to maintain the existing custody arrangements.

2. The trial court abused its discretion and erred in making a finding of fact that the existing schedule remains in the child's best interests.

3. The trial court abused its discretion and erred in making a finding of fact that Mother continues to struggle with alcohol related issues when no testimony or other evidence substantiating such a finding was provided at trial.

4. The trial court abused its discretion and erred as a matter of law in finding Mother in contempt for making a telephone call on Thanksgiving that was 45 minutes in length when the child herself contacted Mother and her family from Father's cell phone.

5. The trial court abused its discretion and erred as a matter of law in finding Mother in contempt by missing one of the co-parenting counseling appointments as no notice had been provided to Mother that the missed appointment was a basis for a contempt allegation and finding.

6. The trial court abused its discretion and erred in maintaining a custody schedule which does not maximize time between the parties as the record establishes that Father works in Baltimore during the school year on Mondays, Tuesdays, and Wednesdays which coincide with Mother's days off of work.

7. The trial court abused its discretion and erred by making findings of fact that Mother's family members were inappropriate caregivers and/or support system as a result of DUI charges (not convictions).

Mother's Brief at 6-8.[2]

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.A.

§ 5321-5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve

---

[2] In the argument section of her brief, Mother combines her second, third, sixth, and seventh issues.

an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**C.R.F. v. S.E.F.**, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated:

The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

**Ketterer v. Seifert**, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

In **M.A.T. v. G.S.T.**, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), this Court explained what constitutes an abuse of discretion.

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

**Id.** at 18-19 (quotation and citations omitted).

Further, this Court has stated: "[a]n abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or

ill will, discretion has been abused." ***Bulgarelli v. Bulgarelli***, 934 A.2d 107, 111 (Pa. Super. 2007) (quotation omitted).[3]

With any custody case decided under the Act, the paramount concern is the best interests of the child. ***See*** 23 Pa.C.S.A. §§ 5328, 5338. Therefore, the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. ***See*** 23 Pa.C.S.A. § 5338.

Section 5328(a) sets forth the best interest factors that the trial court must consider. ***See E.D. v. M.P.***, 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011). Trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order." ***J.R.M. v. J.E.A.,*** 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).

Section 5328(a) of the Act provides as follows.

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

---

[3] Mother argues that the trial court provided the incorrect standard of review in its opinion. ***See*** Mother's Brief at 26-27. The trial court appropriately paraphrased what constitutes an abuse of discretion. ***See*** Trial Court Opinion, 9/4/19, at 3 ("An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias or ill-will."). Further, this issue is immaterial as we are applying the appropriate standard of review herein.

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328.

Further, we have explained as follows:

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order."  23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." ...

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d).

**A.V. v. S.T.**, 87 A.3d 818, 822-823 (Pa. Super. 2014) (citations omitted).

In her first issue, Mother contends that the trial court erred in concluding, "[C]hild expressed a clear desire to maintain the existing custody arrangement. . . ."  **See** Mother's Brief at 13. Mother asserts that Child expressed ambivalence about the current physical custody schedule and

- 12 -

stated "she wanted the decision to be made by the adults. . . ." **See id.** at 14-15. Additionally, Mother claims that the court failed to ask appropriate questions of Child. **See id.** at 15. Mother further argues that, based on the court's improper determination of Child's preference, the court erred in weighing custody factor seven, the well-reasoned preference of the child, based on the child's maturity and judgment, in favor of Father. **See id.** at 20-21.

Mother highlights the following portion of the court's *in camera* questioning of Child:

> THE COURT: . . . Well, [Child], I think, and please tell me if I'm wrong, but I think the current arrangement where you spend a little more time at dad's house than you do at mom's, I think that has been in effect for a little less than a year. Do I have that about right?
>
> [Child]: Yeah.
>
> THE COURT: How do you like that?
>
> [Child]: I mean, it's good.
>
> THE COURT: Anything you would change in it?
>
> [Child]: Not really. I mean, it's good. I mean, it's fun and not that different. It just doesn't feel that different, but you guys can just decide.
>
> THE COURT: Well, I appreciate that. You don't have any suggestions for me as to anything to change?
>
> [Child]:  Not really. I mean, it's like good and like I want you guys to decide.

N.T., 7/23/19, at 13-14.

Our standard of review gives great deference to the trial court who viewed and assessed Child first-hand. **See C.R.F. v. S.E.F.**, 45 A.3d at 443. Contrary to Mother's argument, the trial court questioned Child appropriately and obtained Child's opinions regarding the current custody schedule. Based upon this testimony, the trial court concluded, "[Child] very clearly said she did not want the schedule changed." **See** N.T., 7/23/18, at 132. Upon a review of the record, and in consideration of the deference afforded the trial court, we discern no abuse of discretion with regard to the trial court's conclusion. Accordingly, Mother's first issue does not merit relief.

Although Mother lists issues three and seven separately in her statement of questions involved, she incorporates them into her brief as part of her second issue. We discuss them separately from Mother's general objections to the trial court's analysis of the custody factors for ease of disposition. Mother faults the court for mentioning Mother's alcohol use, because, "[a]lthough the court indicated that it was not considering Mother's inability to overcome her abuse of alcohol is a factor, it is readily apparent that in fact it did, otherwise there would have been no need to mention it at all." Mother's Brief at 25-26. Further, Mother asserts that the trial court improperly considered DUI charges incurred by Mother's sister-in-law and Child's maternal grandmother that did not result in convictions. **See id.** at 18. Mother argues that the court found her to be "irresponsible" based on Mother utilizing these individuals as caregivers. **See id.**

The trial court addressed these issues as follows:

It is denied that the [c]ourt abused its discretion and erred in making a finding of fact that Mother continues to struggle with alcohol related issues when no testimony or other evidence substantiating such a finding was provided at trial. Mother mischaracterizes the [c]ourt's statement that the [c]ourt did not "believe that mother has completely overcome her abuse of alcohol." The [c]ourt made no such finding of fact, but rather was expressing the [c]ourt's impression of the conflicting testimony regarding Mother's continued alcohol abuse presented at the custody trial. Furthermore, as shown by the [c]ourt's statement with respect to Factor 14, the history of drug and alcohol abuse, on the record the [c]ourt specifically stated[,] "we don't believe that Mother has completely overcome her abuse of alcohol. [B]ut, we really didn't have anything solid to base that on so we are not considering [it as] a factor." Thus, the [c]ourt acknowledged that there was no solid testimony or other evidence presented to support the allegation against Mother, and therefore no finding of fact as to Mother's alleged alcohol abuse was put on the record. Therefore, the [c]ourt did not abuse[] its discretion and err in making a finding of fact that Mother continues to struggle with alcohol related issues, because the [c]ourt did not make a finding of fact on the record that Mother does in actuality have an alcohol related issue.

\*\*\*

It is denied that the [c]ourt abused its discretion and erred in making a finding of fact that Mother's family members were inappropriate caregivers and/or support system as a result of DUI charges. Again, Mother mischaracterizes the [c]ourt's description of the [m]other's extended family members. The [c]ourt made no finding of fact that Mother's extended family members were inappropriate as caregivers for the Child, but rather the [c]ourt stated an observation that several members of Mother's extended family members, whom could possibly provide care for the Child, had a history of alcohol abuse. While the [c]ourt made no finding of fact as to the appropriateness of these family members as caregivers for the Child, the [c]ourt did express an opinion that it was an example of Mother's less than perfect decision making. However, when going through the custody factors on the record, the [c]ourt also stated that: "[B]oth parties have done a commendable job of arrang[ing] for day care when necessary,

- 15 -

having family provide that day care when it is necessary and that really both parties are doing that so well that is a neutral factor." The [c]ourt did not weigh the negative traits of Mother's extended family against her in deciding the custody schedule. Therefore, the [c]ourt did not abuse[] its discretion and err in making a finding of fact that Mother's family members were inappropriate caregivers and/or support system as a result of DUI charges, because the [c]ourt did not make such a finding of fact, but rather was expressing an opinion and did not give weight to that opinion against Mother.

Trial Court Opinion, 9/4/19, at 9-10, 14 (citations to the record omitted).

Here, Mother speculates that the trial court considered her alcohol abuse and her family's history of DUIs against her.[4] Yet, the trial court expressly disclaimed any such reliance. Given the trial court's representation that it did not weigh these issues against Mother, we conclude that Mother's issues lack merit.

We now turn to Mother's overarching argument, contained in her second issue, that the trial court made a litany of errors in considering, analyzing, and weighing the custody factors. Mother contends that the court engaged in a "tortured analysis with regard to the custody factors to reach its conclusion that the existing schedule remained in the child's best interests." **See** Mother's Brief at 16. Further, Mother asserts, generally, that the trial court's award of custody is inconsistent with its findings that Child is well adjusted and doing well. **See id.** at 20-23.

---

[4] Mother testified that various family members "have" or "has" DUIs. **See id.** at 72-74. While Mother argues that these are charges rather than convictions, this is not clear from the record.

With respect to custody factor four, the need for stability and continuity in the child's education, family life and community life, Mother argues that she was justifiably late getting Child to school on two occasions. *See id.* at 17. Mother further assails the trial court for suggesting that Mother "utilizes people in her family who have DUI's," for concluding that Mother "abused" her phone calls with Child, and for considering Mother's failure to attend a co-parenting counseling session. *Id.* at 18-19. Moreover, Mother contends that the court improperly faulted Mother for not attending Child's dance recital because the recital occurred when Mother did not have custody. *See id.* at 19-20.

Mother further claims that the court erred in considering custody factor nine, which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs. *See id.* at 21. Mother argues that the court erred in finding this factor favored Father based on its conclusion that, although Mother is loving towards Child and takes care of her emotional needs, Father acts as a "super dad." *Id.* Further, Mother asserts that Father is not as available to care for Child as Mother due to his work schedule.[5] *See id.* at 21-23.

---

[5] For similar reasons, Mother argues that the trial court erred in determining custody factor ten, which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child, favored Father. *See* Mother's Brief at 23.

Moreover, Mother faults the trial court for determining that custody factor eleven, the proximity of the residences of the parties, is "not a factor." *See id.* at 23. Mother asserts that the trial court failed to consider that Mother now resides in the same school district as Father. *See id.* Mother further argues that the court correctly determined that custody factor thirteen, the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another, is neutral. *See id.* at 24. However, Mother argues that this factor being neutral strongly suggests an equal shared custody arrangement. *See id.*[6]

We conclude that the record supports the trial court's findings of fact and conclusions of law. Mother testified that she works for her brother and that her work schedule is flexible enough that she does not work when she has custody of Child. *See* N.T., 7/23/19, at 26-33. Mother acknowledged that

_____

[6] With respect to custody factor six, the child's sibling relationships, Mother asserts that the trial court erred because it considered Child's relationship with her stepsister, who resides with Father and Stepmother. *See* Mother's Brief at 20. Mother claims that there is no precedent extending this factor to stepsiblings. *See id.* However, this Court has previously considered stepsibling and quasi-sibling relationships in assessing a child's best interests. *See M.E.V. v. F.P.W.*, 100 A.3d 670, 678 (Pa. Super. 2014) ("Plainly all of the sibling, step-sibling, and quasi-sibling relationships in this case have either emerged or evolved since the trial court's 2012 order was entered in ways that bear materially on the Children's best interests."). Moreover, the comment to Section 5328 provides that "[s]ubsection (a)(6) is intended to include full-blood siblings, half-blood siblings, step-siblings and adoptive siblings." Accordingly, the trial court did not err in considering Child's relationship with her stepsibling.

Child was late for school a number of times during second grade, but testified that, after September 2018, Child was late for school during her custody time on only two occasions due to traffic issues and car problems. *See id.* at 37-38.

Mother testified that Child is engaged in extracurricular activities including dance, gymnastics, and kickboxing. *See id.* at 48-49. Mother conceded that she missed Child's dance recital. *See id.* at 71. Mother was uncertain whether the dance recital occurred during her custody time and she could not take time off work, or if the dance recital fell on Father's custody time. *See id.* at 71-72.

Mother testified that both parents performed equal parental duties, noting that Child did her homework during both her and Father's custody time, and that both attended Child's medical appointments. *See id.* at 39-40, 58. Mother further testified that both she and Father were capable of providing a loving, stable, consistent and nurturing relationship with Child. *See id.* at 61. With respect to co-parenting counseling, Mother believed that it was helpful, but acknowledged that she failed to attend one session because she forgot about the appointment. *See id.* at 63-66, 74-75. Mother asserted that Child preferred a shared physical custody schedule, claiming that Child informed her that she preferred such a schedule. *See id.* at 58-59.

Father testified that he works in Baltimore as an information technology manager and essentially sets his own schedule. *See id.* at 80. Father works

from home on Thursday and Friday. *See id.* at 80-81. On Monday through Wednesday, Father leaves home at 5:00 a.m. and returns between 5:30 and 6:00 p.m. *See id.* at 102. Child returns from school between 3:00 and 3:30 p.m. *See id.* at 103.

Father testified that, before Mother filed her petition to modify custody, there were a number of times that Child did not do her homework during Mother's custodial time. *See id.* at 84-85. Father further testified that Child was late for school four times after September 2018. *See id.* at 90. Three of those occasions occurred during Mother's custodial time and one occurred during Father's custodial time, when his mother was five minutes late getting Child to school after a two-hour weather delay. *See id.* at 90-91.

Father also complained that Mother called Child for excessively long times, including when Mother called and FaceTimed Child on Thanksgiving, interrupting the family dinner. *See id.* at 91-92.

Further, Father testified that he signed Child up for kickboxing and gymnastics, as well as a summer camp. *See id.* at 82-83. After Mother filed the petition to modify custody, Father testified that Mother attempted to be "super mom." Father explained that Mother then ensured Child was "[g]etting baths on a regular basis, things like that. All of a sudden in almost nine years she wasn't in any extracurricular activities and all of a sudden she is in dance. Just like trying to be super mom, but where was it at for the past nine years." *See id.* at 85. Father asserted that he is "a loving father. I do whatever I can

for [Child]. I am open to any of her concerns and things like that. . . ." **See id.** at 90.

Here, the trial court, in a comprehensive fashion, considered and weighed all relevant factors. In essence, Mother questions the trial court's conclusions and assessments and seeks to have this Court re-find facts, re-weigh evidence, and/or re-assess credibility to her view of the evidence.

We cannot do this absent an abuse of discretion. **See C.R.F.**, 45 A.3d at 443; **see also E.R.**, 129 A.3d at 527. As we stated in **King v. King**, 889 A.2d 630, 632 (Pa. Super. 2005):

> It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, [giving] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . .

(citation omitted). The trial court carefully and appropriately considered each custody factor. Upon review, we conclude that the trial court's conclusions are supported by the record, and we discern no error of law or abuse of discretion. Accordingly, second issue on appeal merits no relief.

In her fourth and fifth issues, Mother challenges the trial court's decision to hold her in contempt for her failure to appear at a co-parenting counseling session, and for calling Child for forty-five minutes on Thanksgiving. Mother asserts that the trial court violated her due process rights by holding her in contempt, *sua sponte*, for her failure to appear at one co-parenting counseling session. **See** Mother's Brief at 32-34. Moreover, Mother asserts that the trial

court erred in holding her in contempt for the forty-five minute phone call on Thanksgiving because the order in question contained no time frame for the phone calls. **See id.** at 28-32.

As is the case with child custody orders in general, we review a contempt order in a child custody case pursuant to an abuse of discretion standard of review. **Garr v. Peters**, 773 A.3d 183, 189 (Pa. Super. 2001). Our child custody statute provides as follows with respect to contempt of a custody order and the award of sanctions.

**(g) Contempt for noncompliance with any custody order.—**

(1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

(i) Imprisonment for a period of not more than six months.

(ii) A fine of not more than $500.

(iii) Probation for a period of not more than six months.

(iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).

(v) Counsel fees and costs.

(2) An order committing an individual to jail under this section shall specify the condition which, when fulfilled, will result in the release of that individual.

23 Pa.C.S.A. § 5323(g).

"As each court is the exclusive judge of contempts against its process, we will reverse an order of contempt only upon a showing of a plain abuse of

discretion." *In re Contempt of Cullen*, 849 A.2d 1207, 1210 (Pa. Super.

2004) (citation omitted).

We further explained in *In re Contempt of Cullen*:

To be punished for contempt, a party must not only have violated a court order, but that order must have been definite, clear, and specific—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct. Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant. In such cases, a contradictory order or an order whose specific terms have not been violated will not serve as the basis for a finding of contempt. To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. A person may not be held in contempt of court for failing to obey an order that is too vague or that cannot be enforced.

When holding a person in civil contempt, the court must undertake (1) a rule to show cause; (2) an answer and hearing; (3) a rule absolute; (4) a hearing on the contempt citation; and (5) an adjudication of contempt....

Fulfillment of all five factors is not mandated, however. [T]he essential due process requisites for a finding of civil contempt are notice and an opportunity to be heard.

*Id.* at 1210-11 (internal citations, quotation marks, and emphasis omitted).

"[W]hen the contempt proceedings are predicated on a violation of a

court order that followed a full hearing, 'due process requires no more than

notice of the violations alleged and an opportunity for explanation and

defense.'" *Diamond v. Diamond*, 792 A.2d 597, 601 (Pa. Super. 2002)

(citation omitted).

Mother argues that the underlying order states, "[b]oth parties are expected to use common sense in scheduling telephone calls to talk to the child[,]" but does not provide a set amount of time and is vague as to what is permissible or impermissible. *See id.* Mother also challenges the trial court's factual conclusion that the call in question occurred on Thanksgiving. *See id.* In response, Father argues that Mother made excessive phone calls, including on Thanksgiving, and, further, that the trial court appropriately held Mother in contempt *sua sponte*. *See* Father's Brief at 14-19.

The full text of the applicable section of the order is:

Both parties are expected to use common sense in scheduling telephone calls to talk to the child. Both parties are hereby directed to refrain from preventing the parent who may be calling from talking to the child, or preventing the child from calling the other parent, provided that the phone calls are not excessively frequent nor too long in duration that they disrupt their schedule.

Order, 10/3/18, at 8.

Based upon our review of the record and the applicable law, we conclude that the trial court erred in holding Mother in contempt. With regard to phone calls, the order in question required the parties to use "common sense" in scheduling phone calls, and required the custodial parent to permit such calls, "provided that the phone calls are not excessively frequent nor too long in duration that they disrupt their schedule." *See* Order, 10/3/18, at 8. Here, as the non-custodial parent, Mother's responsibility was to use her "common sense" with respect to phone calls with Child. Such a provision is not "definite, clear, and specific—leaving no doubt or uncertainty in the mind of the

contemnor of the prohibited conduct." ***See In re Contempt of Cullen***, 849 A.2d at 1210. Accordingly, the trial court erred by holding Mother in contempt for the Thanksgiving phone call.

However, the court also found Mother in contempt for missing the co-parenting session. The court did not credit Mother's excuse for missing the meeting. As a result, the court found that Mother's unexcused absence from the meeting was sufficient basis to find Mother in contempt of the custody order.

Nonetheless, the trial court lacked the authority to hold Mother in contempt *sua sponte* without providing Mother notice that missing the meeting was an alleged basis for contempt. ***See Sutch v. Roxborough Mem'l Hosp.***, 142 A.3d 38, 70 (Pa. Super. 2016) ("If contempt sanctions are based on the violation of a court order, then due process requires notice of the violations alleged …"). Father's petition does not assert the failure to attend the co-parenting class as a basis for finding Mother in contempt. ***See*** Father's Brief at 19.

Under these circumstances, we conclude Mother was not on notice that her failure to appear for one co-parenting session could be the basis for a finding of contempt. Accordingly, the trial court lacked the power to hold Mother in contempt for her failure to attend the session.

Custody order affirmed. Contempt order vacated. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>02/28/2020</u>